Your Honors, my name is John Campbell. I represent the appellants, Kenneth and Tina Wivell, who are with us today. I want to acknowledge that they attended. This is a case ultimately in which I'll be asking the court, which I guess is not unprecedented, to determine that the court doesn't have jurisdiction over the case. In fact, the district court did not either because there was an in-state defendant who was properly named against which there were valid claims. However, I think there's sort of layers of legality here. We have to work backward. The law against trustees, who are of course the neutrals who oversee foreclosures, is that they can be responsible in two ways. One, they can have actual knowledge of a legal reason not to foreclose, and if they then proceed to foreclosure with no investigation, the law is clear in Missouri, a pretty recent case named Sparks, that they can be liable. There's an older precedent that suggests they can also be liable if they, in unusual circumstances, when those exist, engage in no investigation. And in fact, this court, in a decision that dismissed a claim against the trustee, said that the case was dismissed because there were no allegations of unusual circumstances and a failure to investigate, suggesting that if that was alleged, it would be sufficient. Written by Judge Benton, it was a unanimous decision. If there are claims that are even colorable against the trustee, then we have an in-state defendant and proper. But I think what was argued most forcefully, and what seems to be the emphasis of their argument, is that there is no legal reason not to foreclose here, and so the trustee, although it knew many things, simply didn't have any information that would cause it to stop. They don't address unusual circumstances in detail, and I would suggest at a minimum those are present. To get to a legal reason not to foreclose, we have to briefly look at the law and facts as they relate to what the bank should have done. In this case, Wells Fargo. I struggled with how to say this, but I think I have to say it this way, and that's this. This case stands out to me as especially unusual, and for this reason. There are five or six things that servicers have been roundly criticized by, four. These are people who service and collect on loans. By every organization that's looked, federal government, every state attorney general, the Consumer Financial Protection Bureau, every academic, the economist, and in finally, those servicers who have come forward and said we will no longer engage in those practices. Those practices include things like giving misinformation to customers when they call. Now, was Cozzini a servicer? No, Cozzini was the trustee, and so they're the person who stepped in when there was no legal reason not to foreclose. The court found that there was no legal reason not to foreclose, and the servicer could proceed, and that would mean the trustee was fine, because the trustee didn't have a legal reason not to foreclose either, right? So in that sense, the question is the same for both parties, and so I'm suggesting that what we had here was we had misinformation provided to the borrower, starting with when the borrower called while current. This is a veteran coming back from working for the Department of Defense in Iraq, comes back and says, I'm current, but I am concerned. Wasn't all the alleged misinformation oral? Yes, Your Honor. And isn't there an integration clause in this deed of trust? There is. So does that create a legal reason not to be able to foreclose? It does, Your Honor, for two reasons. First, the lowling precedent that we've cited, beginning at page 36 of our brief, exists always in a deed of trust setting in which you have an integration clause, but those cases suggest that after the loan is made, modification of the payment schedule and so I would say oral and behavior. I agree that there was not a written final modification, but that behavior by the bank that is inconsistent with the terms and it creates a pattern of now new payments and different payments and different obligations can be a reason why foreclosure cannot proceed on normal grounds, and I think it has to be that way. Is there a case that does that with an integration clause? Your Honor, I looked to see if the the deed of trust were ever referenced in that detail in the existing cases. There are three cited at our brief. I couldn't find the deeds of trust. It would certainly represent to this court that in my experience, deeds of trust, everyone I've ever seen has this clause, but I cannot tell you that I've seen those deeds of trust and I could not obtain them. But I will tell you, Your Honor, that the second reason I was going to give you is the statute of frauds. And what we learned from the statute of frauds in Missouri, at least under Missouri law, is that we can never use a failure to write something down as a way to perpetrate fraud. We can't use it if there's a promissory estoppel argument, and we can't use it if there's partial performance. In this case, the change in position is pretty stark. My clients are not deadbeats. These are people who bought a home, had been paying on it for years, and when he couldn't find work, said we're still current, we have equity in the home, let's call the bank and see if we can work out a modification. I think it's a very reasonable position. See if you can improve your condition. The bank said, we are going to ask you not to make a payment, because we have a moratorium program. But in order to qualify, you must not make a payment. My clients did exactly as they were told. That was the first payment they missed. That's in the petition. They were current until that day. When they didn't make the payment, they called back and said, can we have the moratorium? They said, actually, it's 90 days. So here we begin the inconsistent information. 90 days, they called back and they say, we don't have a moratorium program. That was a mistake. But we have a loan modification program, and you can apply. Now, at this point, they're behind, but only behind because they were instructed to be behind. I think we cited a couple of things. The lolling doctrine says, you can't tell people you'll accept a different form of performance than punish them when they behave the way you told them they could. Counsel, where's Kazeni's behavior in this, in terms of what part of the deed of trust or what part of Missouri law holds them accountable for the bank's actions? Yes, Your Honor. Well, they wouldn't be accountable for the bank's actions unless they have actual knowledge. So the Sparks case, decided by the Missouri Court of Appeals, Eastern District, held that a trustee must conduct an investigation if they have actual knowledge of a legal reason not to foreclose. I would suggest that we brief pretty extensively that telling someone the wrong thing, inducing their default, then punishing them for listening to you. Telling them that you're going to take good faith payments from them, taking them, then doing nothing with them. Promising affirmatively on June 23rd, you're not going to foreclose, and then foreclosing on the 30th without any notice. Those are all legal reasons not to foreclose. And the thing that the petition says, very clearly, is that Kazeni was made aware of each of these facts. And so, in Missouri, the trustee sits as a neutral, and the law is very clear that they should favor neither party, but that they must oversee the foreclosure. They do things like publish notice, they receive calls from both sides, they sell the property, attempt to get the best price. Our petition alleges in detail that Kazeni, and this is at 42 and 43 primarily, and then again, at paragraphs 112 and 114. Basically, 40 through 48, and 112 and 114 of our petition. It was a petition, then a complaint. It was removed. That Kazeni was called, and that the homeowners told them, the neutral, they are telling us that they're working on a modification. We didn't miss a payment until they told us to. And they have affirmatively promised us that we will not foreclose. Why are we receiving a foreclosure notice from Kazeni? In response, Kazeni, far from investigating, responded by saying, we work for the bank, and you'll need to call them. It's not neutral behavior. It is the behavior of an agent. And of course, that's somewhat unsurprising, because in today's modern world, the neutral trustee struggles to be neutral, because that neutral trustee is employed by the bank as their attorney, and they do repeated work for the bank. And in fact, their model would suffer if they needed to talk to the bank. I'm not suggesting trustees have to conduct an investigation in every case, but I think the law is very clear, that if you're given actual knowledge of a legal reason not to foreclose, you gotta look. What law says that for deed of trust trustees? Now, Your Honor, all trustees in Missouri are deed of trust trustees. Missouri is a deed of trust state. Foreclosure occurs through the deed of trust in every single foreclosure in a residential setting. But not all trustees are deed of trust trustees. Deed of trust trustees are... Oh, I'm sorry. ...are unique to the real estate... I was thinking about judicial, non judicial foreclosure. You're talking about the trustee and the... So let me give you the case. Trustee, generically, and trustee who is functioning as a deed of trust trustee. Sure. The law, Your Honor, is set out, and let me give you the pages. Beginning on page 20 of our brief, we set out the law in detail. Your Honor, you may find it somewhat interesting, if you're a student of history, that the first cases date back to prior to the Civil War. And what they say is, is that trustees owe a duty of strictest impartiality. And, Your Honor, these are trustees in mortgage settings. That's a case from 1929, that they owe a duty of strictest impartiality. Courts have said, neither the law nor the parties intend that the trustees shall be a nose of wax, a mere figurehead in the hands of the creditor. He's placed in a position to act fairly by all interest. That's a case from 1876, Missouri Supreme Court. It has never, ever been questioned. We see cases in 1866, 1859. Trustees are entrusted with the important function of transferring one person's property to another. Therefore, both reason and justice will exacted them scrupulous fidelity. And so it is undisputed that a deed of trust, trustee, must be neutral. And then you'll get to, on page 23, sparks. And that's 400 Southwest 3rd, 454. I know that case well, my wife argued it. It was a case in which the Missouri Court of Appeals said, we're not gonna hold trustees liable for much. Frankly, I think that's what they said. But we are gonna hold them liable if they have actual knowledge of a legal reason not to foreclose. That's as far as we're gonna go. We're not gonna make them go investigate in all settings. But if they're told of a reason not to foreclose, they can't charge ahead, because that wouldn't be neutral. So, Your Honor, I would move to something I think that you're touching on here, and that is that at this stage, the court was supposed to ask, is there a colorable claim against the trustee? Is there a colorable claim in the court? This court has said that the question, then, and colorable is, it's well established that if it is clear that under governing state law, the complaint does not state a cause of action against the defendant, the jointer is fraudulent. However, if there is a colorable cause of action, that is, if state law might impose liability on the resident defendant under the facts, then there is no fraudulent jointer. First, under the law I just gave you, and I wanted to work with that first, it's clear that we have at least made a colorable claim that the trustee knew that these people were misled, that the trustee knew that there were affirmative promises not to foreclose that were broken, and that the trustee did nothing. That's both actual knowledge and unusual circumstances. And then I would show the court one other thing. I hold in my hand, and we had it in the Missouri, in which trustees were sued under the same theory, and motion to dismiss was filed, and the trial court denied the motion to dismiss on these facts. One of these, the Lendersmith case in Kansas City, was against the same trustee for the same facts. In that case, it was alleged that a man went to the bank, said, I've lost my spouse, and I am going to struggle to make payments in the future. I'm current now, and I could pay for a modification. I do. They said, call the 1-800 number. The 1-800 number said, don't pay. Call right for a modification, but don't pay while you're doing that, or we can't consider you. Then they foreclosed due to the default they caused. The trustee was sued, and the bank was sued. The court denied a motion to dismiss on the trustee. That trustee was causing the coven, the same trustee in this case. What page of your brief discusses that case? It's in our reply brief, Your Honor. We cited two cases in the appellant's brief from St. Charles, and those two cases were decided as Woodson and Rippey. And then in our reply brief, at page 12, we discussed Lendersmith and cite the order. And so that's an identical case. It's about the middle of the pages, I recall, the middle of the paragraph. There's no citation. Should have bolded it. There's no citation. Let me look at that, Your Honor, and see if we have a citation to that or Rippey versus J.P. Morgan. Your Honor, I know that we cited Rippey and Woodson in our appellant's brief. You named the cases, but you don't give where they're located. I mean, there's no citation to tell us where to go to read the opinion that supposedly supports them. I understand. What I was suggesting is, we cited Rippey and Woodson, and I believe did provide a note where they were in the record in the appellant's brief. It appears we failed to do that to Lendersmith, and I apologize. What I would suggest is, it is in the record. It is a document that is available to the court, and I'd be happy to file a one line letter telling you where it is. I don't want you to rely on it without seeing it, but I can tell you we have it before you. It was filed with the district court, including, in fact, the petition in that case was filed with the district court for its review. I see that I have eroded deeply into my time. If I could, I would reserve one minute to talk to you and rebuttal. Thank you, counsel. Mr. Martin? Thank you, your honor. My name is Eric Martin. I may please the court. My name is Eric Martin, and I represent defendant Wells Fargo Bank in this case. I'll be sharing my time today with co-defendant's counsel, Gary McCubbin, who represents Cosney and McCubbin. This court should affirm the district court's dismissal of both Cosney and Wells Fargo Bank. First, Cosney was properly dismissed, and the motion to remand was denied because there is no colorable claim that's been asserted against Cosney. And second, the claims against Wells Fargo Bank fail under the Iqbal Twombly pleading standards. Now, first, in turning to the trustee in this case, the Wavells initially filed this case in January of 2012. After it was removed, they voluntarily dismissed. At that point, they then brought a new lawsuit adding Cosney as a reason to defeat diversity jurisdiction. It was removed. The court examined the issue of whether or not Cosney had been fraudulently joined and determined that it had. Now, interestingly, the Sparks case, which was mentioned in the appellant's argument, was decided in April of 2013. This decision came down in July 2013, the decision to dismiss the claims against Cosney. And what is significant about that is that the Sparks case, contrary to how appellants are characterizing it, the Sparks case very definitively says that a trustee has no duty to investigate, and simply the borrower's statements that they believe that there's a problem does not trigger any such duty. In fact, in this case, there are only two claims that the court examined the dismissal, one for negligence and one for breach of fiduciary duty. The negligence count actually asserted that Cosney had assumed the duty and responsibility for servicing plaintiff's loan far beyond anything that's ever been countenanced under Missouri law. And secondly, they claimed that there had been a breach of fiduciary duties listing various items such as a failure to investigate. But the Sparks case definitively said that those mere statements by a borrower that there's a problem or perceived irregularity does not trigger any duty by the trustee. Under Missouri law, what sorts of actions by the bank or between the bank and the trustee would trigger some responsibility to stop a sale? Your Honor, the Spires case, the Missouri Supreme Court case had looked at various portions of that and had not found one where that had been rose to that level. I think that the cases talk about there being some actual knowledge on the part of the trustee. If there's an allegation that the trustee actually knew as a part from simply being told if he had some special knowledge that he had gained from the lender that the foreclosure was not warranted and yet proceeded to move forward anyway, that would rise to that level. But what the Spires case tells us is that we have to look at the contract. We have to look at the deed of trust to figure out what it is that the trustee must be looking at in its impartial setting. Are there duties implied by law in Missouri beyond the four corners of the deed of trust that a trustee is obligated to and fairness that is implied by law? But the Spires case tells us that we look at the four corners of that contract to determine what exactly the trustee is doing and whether that runs afoul. And the district court did that analysis. It looked at what was in the deed of trust, such as mailing notice of sale to the borrower, advertising the sale, selling the property at auction to the highest bidder for cash, delivering the trustee's deed to the purchaser. All those things were outlined in the deed of trust. They found no allegation that the trustee had done anything improper on that and no allegation of actual knowledge of anything else that was wrong. And remember, what the Sparks case tells us is that merely the borrower is saying there's a problem. In that case, the borrower was saying the PNC Bank had promised modification and just like this case, that the borrower was told to check in later at various times. Well, here, but aren't they alleged to have told the trustee that they were told by Wells Fargo that the sale was off on, I think, June 23rd? Your Honor, and then they make the allegation in early June, and then they later say that Cosney informed them that the sale right after that was moving forward. And I'll talk about the whole Iqbal Twombly analysis in regards to Wells Fargo, but you have to look at the totality of these allegations. Five different modification attempts, four different occasions the borrowers were told that they were in foreclosure, the borrower was rejecting one modification. So in looking at that in total, there was nothing there that the district court saw that rose to a plausible claim of relief against Wells Fargo. But turning to the trustee, the issue is solely what did the trustee have in front of it? And the mere allegations of the borrower are not enough to trigger that. An interesting case... Since the trustee will have its own time, could you address the argument against the bank on the merits that was highlighted today? That is that the only time and the only reason they went into default was that your people told them not to pay in order to take advantage of this program? Absolutely, Your Honor. And I would come into this panel that the Eighth Circuit cases of the Cox case and the Freitas case, which we have... Which we have briefed, provide a blueprint for why this case should be dismissed. There was an 18 month period in which there are allegations of back and forth between the borrower and Wells Fargo. And I urge the court to look very carefully at the allegations of how they're actually pled and not any gloss of how they are interpreted in the appellate brief. Because, for example, in the January 2009 allegation, there's simply an allegation that the borrowers were told that there was a moratorium program and they had to be in default. There's not a statement in there that they were told not to pay. There's only one not to pay statement that comes in March of 2009. But after that, after that, there are a series of events such as the borrowers being told on foreclosure. The borrowers being told in August 2009... And what's the synonyms of that? You mean that they were then on notice that they should have paid the amounts that they didn't pay earlier? Exactly. And the district court... So they had a chance if they'd withheld the payment, you're saying they had a chance to rectify that before the sale went through? Exactly, Your Honor. And the district court, in looking at the Freitas opinion as a support, noted that borrowers can't have selective hearing about what they want to hear. They must look... The court, context specific, must look at all of the allegations to see if what is alleged is plausible. And that's exactly what happened in the Cox case from the 8th Circuit in 2012. There were allegations that the borrowers were told not to pay and that a loan modification was coming and that then a foreclosure occurred. And the Cox case did this very specific Iqbal Twombly type of analysis and found that the totality of what was alleged, that this course of dealing, that these various instances when the borrowers were told that they needed to become current or that they were in a foreclosure status, that that sunk a hole in the plausibility of these claims. And as a result, the 8th Circuit affirmed dismissal of a fraudulent misrepresentation count, a negligent misrepresentation count, breach of covenant of good faith and a period have to be looked at as a whole. There was a reference to the lulling allegations, but the lulling case law under Missouri simply says that if there's been an allegation of lulling, then there has to be some sort of notice that a gratuitous promise not to enforce the black letter of the contract is no longer going to be honored. So in other words, you have to say something to the borrower. You've got to pay now. That's exactly what's alleged throughout this, throughout the complaint, is that the borrowers were told repeatedly that they were in foreclosure status. And in fact, one of the allegations in April 2010, they were told that they needed to make trial period payments, three payments, and then make a balloon payment at the end. That wasn't done. And so as a result, they were on clear notice under the Cox and Freitas standard of what had to be done to prevent any sort of foreclosure. That is a theme, the Iqbal Tuomly theme runs through each of these counts, that it's sufficient to dismiss the fraudulent misrepresentation claim, the Missouri Merchandising Practices Act claim, as well as a negligence and negligent misrepresentation claim. And our brief goes into detail about how there's no duty under a negligence theory, how under the MMPA, there is no connection with the original sale, that the vast majority of the case law is on that side. And so for all these reasons, affirming the dismissal of Wells Fargo Bank is appropriate, as well as keeping Cozzie in the case. I see that my allotted portion of the time is over, so I will turn it over to Co-Defendant's Counsel, Gary McCubbin. Thank you, Mr. Martin. Mr. McCubbin. Thank you, Your Honor. I'm Gary McCubbin, peering for Apley, Cozzie, and McCubbin. The issue before the court this morning is not whether my firm lived up to Mr. Campbell's ideals as to how a trustee should act. The issue, of course, is whether the complaint states a claim. Basically, Mr. Martin, I think, covered the issue of the denial of the motion to remand. I'd like to focus my attention on the two counts that the court involuntarily dismissed against such, which was the negligence claim and the breach of fiduciary duty claim. On the negligence claim, looking at the Spires case that was cited by the parties in the brief, the court correctly determined that to determine the trustee's views, one looks to the deed of trust itself. The court did that, concluded there was nowhere in the deed of trust was the trustee obligated to oversee the creditor's conduct or assist the borrower. There was no legal duty to do that, and the court properly perceived that. On the claim for breach of fiduciary duty, the district court, basically in reliance on the Killian case, another case that's cited by both parties, cited the rule that when requested to do so by the creditor, the trustee may proceed to conduct the sale without conducting an investigation so long as the trustee has no actual knowledge of a matter that would legally preclude the foreclosure. Basically, the district court parsed through all of the allegations and noted they fell into two categories. One category was factual contentions, and the court concluded that collectively, they still failed the state of claim for breach of fiduciary duty against the trustee. And noted the other class of allegations or contentions were really legal conclusions, which of course, the court could have completely disregarded in reviewing a motion to dismiss, but it didn't. The court actually analyzed them and concluded that the contentions of law, the legal conclusions, actually lacked support under the law and were not supported even by persuasive logic. Counsel, would you address your opponent's citation to Linder Smith as a case that indicates Missouri recognizes a claim factually similar to this to a trustee that would make such a claim not frivolous? Yes, thank you. I would first mention the procedural. I don't think that opinion is properly in the record. Under, I believe, this court's local rule 32.1, if that's an unreported decision, unpublished opinion, and under this court's rule, I believe the rule says that is not precedent. So procedural, I think there's an issue. Well, that's a state, this is a state court decision. Correct, correct. But in fairness... What about assuming... Go ahead, go ahead. Thank you. In fairness to the judge who wrote that opinion, I don't think he intended for this court to rely on that. And secondly, the only thing I would say... What court is it from? Sorry? What court is it from? I believe that's Clay County, Missouri. So it's a county court decision? Yes, yes. Trial court? Yes. That's correct. And I... So do you think it's a correct statement of Missouri law once we get it and look at it? Do you think it's a correct statement of Missouri law? No, I do not. I'm confident that had the court dismissed that petition, that dismissal would have been upheld on appeal consistent with the Sparks case, which I believe is actually dispositive of this entire appeal. Basically, in the Sparks case, the court reaffirmed the rule that the trustee may proceed unless he has actual knowledge of a matter that would legally preclude foreclosure. And specifically, the court, as Mr. Martin touched on, said that to determine what that phrase means, what legally prevents the foreclosure, you look to the deed of trust. You do not look to, this is my term, extra contractual dealings or matters. You look to the deed of trust. Here, the plaintiffs allege, they admit they were in default under the strict terms of the deed of trust. They also admit that the trustee was directed to foreclose at the request of the creditor. And basically, those two admissions are fatal to their claim of breach of fiduciary duty against the cause and the firm. Time's almost up. I thank the court for its attention. Thank you, counsel. Mr. Campbell, your rebuttal. Yes, Your Honor. I'll be very brief. Just have to be. Two things. First, the idea, the issue that Mr. McCubbin shared with you was whether or not there's a valid claim against the trustee. That's not the issue. The issue is whether there is a colorable claim, meaning it might state a claim against the trustee. I believe it's entirely valid, but I would suggest that in addition to Linder-Smith, which I would ask that we can supplement, and I believe it's properly in the record before the district court, and Woodson and Rippey, which we have both cited in our appellant's briefing given the dock numbers and sites. Those are three different cases across the state of Missouri in which trial courts have said, this is a proper claim against the trustee. To suggest that it could never be, that there's no way it might be proper, is to disregard three different orders. It also is to disregard the test you heard, which is, did the trustee have actual knowledge of a legal reason not to foreclose? Actual knowledge? We called and told them. The argument that telling them affirmatively what's going on can't be actual knowledge would mean they'd have to hear from the bank. The bank would have to call them and say, we don't have a legal reason to foreclose. So actual knowledge is when someone calls you and tells you. As for a legal reason to foreclose, this case, this court will have to decide. I've seen my time's up. I'll very briefly conclude if I could. This court will have to decide... If they just called and told them things that don't amount to a claim against the bank. In other words, if the court agrees that the order on the motion to dismiss was correct, then would it follow that there was no tolerable claim against the trustee? Absolutely. Yes, Your Honor, you have the steps exactly right. And where I was headed in that last moment was to say that in this case, we have pled that the bank provided misinformation that induced default. We've cited the cases that say you can't lull someone in and then punish them for listening. A party has a right to wait performance. They suggest that after that they're in default and they should pay, except that now there are fees and penalties. There are late charges and overdue amounts and attorney's fees because they're behind, because the bank told them. They made good faith payments when they were asked, and then they were promised only a week before foreclosure, affirmatively, that foreclosure would not occur. They only found that it did when they called to say, hey, we haven't heard from that negotiator. And they said, oh, but we foreclosed on your home today. Now, if this court affirms that those are not legal reasons not to foreclose, it means that everything that has been challenged about servicers, the regulations that are in place to stop this very behavior I'm describing, the claims that have proceeded all over the country about them have been wrong. It is a colorable claim for a legal reason not to foreclose. It's a colorable claim against the trustee, and for that reason, I respectfully suggest that subject matter jurisdiction is lacking and the court should remand. Thank you, Mr. Campbell.